UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NORTHEASTERN LUMBER MANUFACTURING
ASSOCIATION,

                  Plaintiff,
    v.                                       **DECISION AND ORDER**
                                                          08-CV-568S

NLM ENTERPRISES, INC. d/b/a Amtech
Packaging Solutions,

                  Defendant.

## I. INTRODUCTION

In this intellectual property case, Plaintiff Northeastern Lumber Manufacturing Association (hereinafter "NeLMA") alleges that Defendant NLM Enterprises, Inc., d/b/a Amtech Packaging Solutions (hereinafter "Amtech"), infringed its federal trademark rights by using its distinctive "NeLMA" marks without authorization. Amtech failed to appear through counsel, which is required of corporate defendants, resulting in the Clerk of the Court entering default against it. Presently before this Court is NeLMA's unopposed Motion for Summary Judgment.[1] For the following reasons, the motion is granted.

## II. BACKGROUND

**A.    Facts**

This Court accepts the facts alleged by NeLMA as true for two reasons. First, because Amtech is in default, the allegations that establish its liability must be accepted as true. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir.

---

[1] In support of its Motion for Summary Judgment, NeLMA filed the following documents: a memorandum of law; a Rule 56.1 Statement of Undisputed Facts; the Affidavit of George Burns, Esq.; the Affidavit of Jeffrey Easterling; and the Affidavit of Jeffrey Spring.

1

1992); FED. R. CIV. P. 8(b)(6). Second, because Amtech failed to respond to NeLMA's summary judgment motion, the factual allegations in NeLMA's Local Rule 56.1 statement are deemed admitted. See Local Rule 56.1(c) (statements of undisputed fact that are not controverted by the non-moving party are deemed admitted).[2]

NeLMA owns common law and registered trademarks associated with its system for demonstrating compliance with the international inspection program known as the "Wood Packaging Materials Inspection Program," as well as with programs concerning the compliance of softwood lumber with grades and standards approved by the American Lumber Standards Committee. (Local Rule 56.1 Statement of Undisputed Facts (hereinafter "Rule 56.1 Statement"), Docket No. 18-2, ¶¶ 1-3.)

NeLMA has been using its marks in connection with the certification of wood packaging material and the grading and certification of lumber and timber in interstate commerce since 2002 or earlier. (Rule 56.1 Statement, ¶ 5.) The NeLMA stamp on a wood packaging product certifies that the wood has been properly heat treated in line with governing standards. (Rule 56.1 Statement, ¶¶ 6-12.) Through worldwide use of the marks and vigilance in protecting and policing the use of the marks, the NeLMA marks have acquired consumer recognition and goodwill in the minds of the relevant public. (Rule 56.1 Statement, ¶¶ 12-14.)

Amtech has never been certified by NeLMA to use the NeLMA mark on its international wood packaging. (Rule 56.1 Statement, ¶ 15.) Nonetheless, beginning in

---

[2]NeLMA's Rule 56.1 Statement contains citations to the record evidence in this case. This Court has confirmed and is satisfied that the evidence cited supports the assertions therein. Cf. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001) (holding that factual allegations contained in a Rule 56.1 Statement that find no support in the record evidence must be disregarded and the record reviewed independently). Consequently, this Court cites to NeLMA's Rule 56.1 Statement.

2004 and continuing through May 2008, Amtech used the NeLMA mark without permission or a license. (Rule 56.1 Statement, ¶¶ 16-18 .) One of Amtech's employees, Jeffrey Spring, became aware that Amtech's products improperly bore NeLMA marks, and he repeatedly communicated this to Amtech's president, Nancy McNamara, and advised her that a license was necessary. (Rule 56.1 Statement, ¶¶ 16-19.)

Spring also told McNamara's husband, Michael McNamara, that Amtech needed a license to use the NeLMA marks. (Rule 56.1 Statement, ¶ 20.) But rather than discontinue using the marks or obtain a license, Michael McNamara arranged for the creation and purchase of stamps bearing counterfeit NeLMA marks and other false designations from a company in Rochester, N.Y. (Rule 56.1 Statement, ¶ 22.) The stamps contained counterfeit NeLMA logos, "HT" heat-treatment symbols, "US-681" certifier numbers,[3] and International Plan Protection Convention ("IPPC") designations. (Rule 56.1 Statement, ¶ 24.) Neither Michael McNamara nor Amtech received permission to use NeLMA's mark or have these stamps created. (Rule 56.1 Statement, ¶ 26.) Again, Spring warned the McNamaras that using the NeLMA marks and counterfeit stamps was illegal. (Rule 56.1 Statement, ¶ 27.) Nonetheless, Amtech continued using the marks.

**B.    Procedural History**

NeLMA filed its Complaint against Amtech on July 31, 2008, alleging federal trademark infringement, counterfeiting, federal unfair competition, false designation of origin, passing off and false advertising, and violations of the New York Deceptive Trade Practices Act. (Docket No. 1.) Amtech immediately agreed to partial settlement and

---

[3] Another lumber certifier, B&B Lumber, is the legal and exclusive owner of the "US-681" certifier number, and was provided that number by NeLMA. (Rule 56.1 Statement, ¶ 25.)

consented to the entry of judgment against it for injunctive relief and an assessment of damages, including attorney's fees, which it agreed to pay in monthly installments. (Rule 56.1 Statement, ¶¶ 33-36; Easterling Affidavit, Docket No. 18-5, Exhibit D.)

Shortly thereafter, on August 12, 2008, the parties filed a Joint Motion for Entry of Judgment by Consent to implement the partial settlement agreement. (Docket No. 3.) Although it was represented that Amtech had the benefit of counsel for purposes of negotiating the proposed consent judgment, no attorney appeared on Amtech's behalf in this action. Because corporations cannot appear pro se in federal court, see, e.g., Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 187 (2d Cir. 2006) ("it is well-settled law that a corporation may appear in the federal courts only through licensed counsel"), this Court denied the joint motion without prejudice to it being re-filed after Amtech retained counsel. (Docket No. 5.)

On October 22, 2008, the Honorable Jeremiah J. McCarthy, United States Magistrate Judge, conducted a status conference, at which he again advised that corporations cannot appear pro se and set a deadline of November 3, 2008, for Amtech to appear in this action through counsel. (Docket No. 11.) Thereafter, Amtech notified Judge McCarthy by letter that it would not be appearing in the action or filing an Answer to the Complaint through counsel.[4] (Docket No. 12.) This led to NeLMA securing an entry of default on November 12, 2008 (Docket No. 17), and filing the instant Motion for Summary Judgment on January 28, 2009 (Docket No. 18).

On February 16, 2009, this Court issued an Order affording Amtech a final

---

[4] The "Answer" filed at docket number 6 was not filed by counsel.

opportunity to retain counsel and defend this action. (Docket No. 19.) This Court warned Amtech that it would take NeLMA's Motion for Summary Judgment under advisement as unopposed if counsel did not appear by the imposed deadline of March 9, 2009. By letter dated March 4, 2009, Amtech again advised that it would not appear through counsel and it expressed its understanding that NeLMA's motion would be treated as unopposed. (Docket No. 20.)

### III. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is warranted when the moving party demonstrates that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id. All ambiguities and inferences are drawn in the non-moving party's favor. Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970); Giannullo v. City of NY, 322 F.3d 139, 140 (2d Cir. 2003).

By rule, judgment may be entered against a party that fails to respond to a properly filed motion for summary judgment, if appropriate. FED. R. CIV. P. 56 (e)(2). This district's Local Rules provide for similar relief:

> upon any motion filed pursuant to Federal Rules of Civil Procedure 12, 56 or 65(a), the moving party shall file and serve with the motion papers a memorandum of law and an affidavit in support of the motion and the opposing party shall file and serve with the papers in opposition to the motion an answering memorandum and a supporting affidavit. *Failure to comply with this subdivision may constitute grounds for resolving the motion against the non-complying party.*

Local Rule 7.1(e) (emphasis added).

But failure to respond to a summary judgment motion, standing alone, is not enough to warrant granting the motion: "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244, 246 (2d Cir. 2004) ("failure to respond to [a Rule 56] motion does not alone discharge the burdens imposed on a moving party"); Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001). If the moving party fails to submit evidence sufficient to meet its burden, "summary judgment must be denied even if no opposing evidentiary matter is presented." Amaker, 274 F.3d at 681. Consequently, the Second Circuit has emphasized that district courts "'in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'" Vermont Teddy Bear, 373 F.3d at 246 (quoting Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)).

**B.   Liability**

Amtech has essentially conceded liability in this case, as demonstrated by the partial settlement agreement and several filings and representations made by Nancy

McNamara on Amtech's behalf. (See, e.g., Docket No. 6.) Even without this concession, Amtech's violation of federal law is apparent. First, NeLMA has sufficiently demonstrated that Amtech used packaging that bore near-identical reproductions of NeLMA's marks in the sale of packaging goods and services without NeLMA's consent. This violates NeLMA's trademark rights, as set forth in 15 U.S.C. § 1114 (1)(a), which makes it illegal to "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services" in a manner likely to cause confusion, mistake, or to deceive, without consent of the mark owner.

Second, NeLMA has sufficiently demonstrated, particularly through the Spring affidavit, that Amtech caused stamps bearing counterfeit NeLMA marks to be manufactured, and then used the stamps to mark its packages destined for interstate and international commerce with the counterfeit mark, without NeLMA's permission. This use of counterfeit marks violates 15 U.S.C. § 1114 (1)(b), which makes it illegal, without the consent of the owner of the registered mark, to "reproduce, counterfeit, copy, or colorably imitate a registered mark" and apply that counterfeit mark to labels, packages, and other things intended to be used in commerce in connection with the sale or distribution of goods or services in a manner likely to cause confusion, mistake, or to deceive.

Third, NeLMA has sufficiently demonstrated that Amtech's use of the counterfeit marks resulted in unfair competition, false designation of origin, passing off, and false advertising. By applying the counterfeit marks to its packages, and then placing those packages into the stream of interstate commerce, Amtech caused confusion and deceived foreign and domestic customs officials, shippers, and recipients of the packages, who

where led to believe that the wood packaging met industry standards for heat treatment, and that Amtech was authorized by NeLMA to make that certification. This violated 15 U.S.C. § 1125(a)(1)(A), which makes it illegal for any person to use "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."[5]

Accordingly, NeLMA has established liability.

**C.   Damages**

The availability of monetary relief and attorneys' fees to one who successfully establishes a trademark violation is governed by 15 U.S.C. § 1117. Under the statute, a plaintiff is entitled, subject to equitable considerations, to recover: (1) the defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action." See 15 U.S.C. § 1117(a). To determine the defendant's profits, the plaintiff must prove only the defendant's sales. Id. In exceptional cases, such as willful infringement, the plaintiff may also recover attorneys' fees. Id.; see Spring Mills, Inc. v. Ultracashmere House Ltd., 724 F.2d 352, 357 (2d Cir. 1983). In the absence of extenuating circumstances, a finding of willfulness may also trigger § 1117(b), which mandates trebling damages for willful violations "to deter potential counterfeiters." See 15 U.S.C. § 1117 (b); Louis Vuitton S.A.

---

[5] NeLMA does not appear to move for summary judgment on its final claim, which is that Amtech's conduct constitutes a deceptive business practice under § 349 of the NY General Business Law. This is likely because this state law claim is largely akin to the federal unfair competition claim, and therefore, requires no separate analysis.

v. Spencer Handbags Corp., 765 F.2d 966, 970 (2d Cir. 1985).

NeLMA first seeks Amtech's profits, which it calculates to be $237,000. This figure is supported by Spring's affidavit. Spring worked in Amtech's administrative office between 2004 and 2008, and is therefore familiar with Amtech's purchases, sales, and profit margins. (Spring Affidavit, Docket No. 18-6, ¶ 2.) He states that Amtech's gross revenues from sale of products bearing the infringing and counterfeit NeLMA marks was $1,185,000. (Spring Affidavit, ¶ 10 and Exhibit B). Under the statute, Amtech's sales is all that NeLMA must prove. See 15 U.S.C. § 1117 (a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.") Nonetheless, NeLMA seeks only Amtech's profits, which Spring estimates averaged 20% or $237,000. (Spring Affidavit, ¶ 11.) Accordingly, this Court finds that NeLMA is entitled to recover Amtech's profits of $237,000 as requested, pursuant to 15 U.S.C. § 1117(a).

Next, NeLMA seeks treble damages under 15 U.S.C. § 1117 (b) for Amtech's willful infringement and use of counterfeit stamps. Again, Spring's affidavit supports this request. Spring repeatedly notified both Nancy McNamara and Michael McNamara that Amtech could not use NeLMA's marks without a license. (Spring Affidavit, ¶¶ 5, 6.) Nonetheless, rather than obtain a license, Amtech commissioned the creation of counterfeit stamps bearing NeLMA marks, and used them on its products. (Spring Affidavit, ¶¶ 6, 8, 10.) This Court finds that this is clear evidence of willfulness and no extenuating circumstances have been demonstrated by Amtech. Treble damages in the amount of $711,000 is therefore required by 15 U.S.C. § 1117 (b) ("[T]he court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount

is greater.")

Finally, NeLMA seeks to recover its attorneys' fees of $12,079.75. Given this Court's finding of willfulness, NeLMA is entitled to fees under both 15 U.S.C. § 1117 (a) and (b). In this Court's judgment, the fee request of $12,079.75 is reasonable, and will therefore be awarded.

## IV. CONCLUSION

This Court warned Amtech several times that it risked entry of judgment against it. Despite these warnings and ample opportunity to defend this case, Amtech failed to appear in this action through counsel and respond to NeLMA's Motion for Summary Judgment. Amtech's letters to this Court demonstrate that it was aware of the consequence for failing to appear, and that it understood that the relief NeLMA requested could be granted as unopposed. Accordingly, having found that NeLMA has established liability and damages, its Motion for Summary Judgment is granted and judgment will be entered in NeLMA's favor against Amtech consistent with the parties' partial settlement agreement and this Court's findings.

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Summary Judgment (Docket No. 18) is GRANTED.

FURTHER, that in accordance with the Partial Settlement Agreement signed by the parties, it is hereby ORDERED

> (1) That Amtech, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Amtech who receive actual notice of the Court's order by personal service or otherwise, be permanently enjoined from:

(a) Using any of the NeLMA Marks or any confusingly similar mark, specifically including, but not limited to, any term that includes "NeLMA" or a misspelling of NeLMA in connection with the promotion, marketing, advertising, public relations and/or operation of Amtech's business;

(b) Diluting, blurring, passing off or falsely designating the origin of the NeLMA Marks, and from injuring NeLMA's goodwill and reputation;

(c) Doing any other act or thing likely to induce the belief that Amtech's businesses, services or products are in any way connected with, sponsored, affiliated, licensed, or endorsed by NeLMA;

(d) Using any of the NeLMA Marks or any confusingly similar mark for goods or services, or on the Internet, or as domain names, email addresses, meta tags, invisible data, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Amtech with NeLMA;

(2) That Amtech, in accordance with 15 U.S.C. § 1116(a), serve upon NeLMA within thirty days after service of the permanent injunction a report in writing under oath, setting forth in detail the manner and form in which Amtech has complied with the permanent injunction;

(3) That pursuant to 15 U.S.C. § 1116(d)(1)(A), all counterfeit marks and all goods or documents or other things bearing such marks be seized, together with the means of making such marks, and records demonstrating the manufacturer, sale, or receipt of things involved in such violation;

(4) That pursuant to 15 U.S.C. § 1118, all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the Amtech, bearing Amtech's confusingly similar mark, be delivered up and destroyed;

(5) That Amtech pay NeLMA $10,000, the balance due on the promissory note, to reimburse NeLMA for the attorneys' fees and costs NeLMA has incurred through July 25, 2008, the date of the Partial Settlement Agreement.

FURTHER, that NeLMA is separately entitled to judgment against Amtech in the amount of $960,079.75 as follows:

(1) $237,000 in profits pursuant to 15 U.S.C. § 1117 (a);

(2) $711,000 in treble damages pursuant to 15 U.S.C. § 1117(b);

(3) $12,079.75 in attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b).

FURTHER, that the Clerk of the Court shall enter judgment in NeLMA's favor against Amtech consistent with this Decision and Order and then close this case.

FURTHER, that the Clerk of the Court shall mail a copy of this Decision and Order to Nancy L. McNamara, Amtech Packaging Solutions, 2069 Railroad Avenue, Ontario, NY 14519.

SO ORDERED.

Dated: April 26, 2009
       Buffalo, New York

                                                  /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                              United States District Judge